BUTTERFIELD v. HUNGERFORD ET AL.

1. **Priority of Liens:** QUESTIONS OF FACT AS TO AMOUNT OF LAND COVERED BY LIEN OF PRIOR DATE.  For consideration of the evidence, see opinion.

2. **Mortgage Foreclosure:** ALLOWANCE OF INTEREST AS AGAINST JUNIOR MORTGAGEE ON TAXES PAID, ETC.  Where a mortgagee pays taxes and other prior claims to protect his own lien, he should not be allowed more than six per cent per annum interest on such advances, as against a junior incumbrancer in a foreclosure proceeding, though he may have an agreement for ten per cent with the mortgagor.

3. ———: ATTORNEY'S FEE: NO EVIDENCE.  The allowance of an attorney's fee in this case without proper evidence was erroneous.

*Appeal from Clinton Circuit Court.*

MONDAY, DECEMBER 21.

ACTION to foreclose a mortgage, executed to the plaintiff by the defendant D. K. Hungerford, upon 117 acres of land

in Ida county. The defendant Hallam was made a party as claiming some interest in the land. No defense was made by Hungerford. There was a decree for the plaintiff for the amount of his debt, and by the decree he was allowed the only lien as to a part of the land. As to the remainder of the land the defendant Hallam was allowed the first lien, but only for a portion of his claim. Hallam appeals.

*J. W. Hallam*, for appellant.

*Howat Bros.*, for appellees.

ADAMS, J. —I. The land, more particularly described, is N. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$, and the N. 43 acres of the S. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, of section 5, township 87, range 40. Hungerford, it appears, never had the legal title to the property. It seems to be agreed, however, that he purchased it of the Iowa Railroad Land Company, and became the equitable owner, and also that Hallam holds the legal title merely as security. It is agreed, also, that Hallam is a prior incumbrancer as to the entire tract covered by the plaintiff's mortgage, except $21\frac{1}{2}$ acres, to-wit, the N. $21\frac{1}{2}$ acres of the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of the section. As to that, the plaintiff denies that Hallam has any lien at all, notwithstanding he holds the legal title; whereas Hallam contends that he holds that as he holds the remainder, and holds it all as security for his debt, and that his debt constituted the prior incumbrance. There is no question of priority, because it is not denied that Hallam is the prior incumbrancer as to the $21\frac{1}{2}$ acres, if the same was understood to be embraced within his security, as he contends. The fact appears to be that Hallam, in January, 1882, loaned D. K. Hungerford $1,100. Hungerford at that time held six contracts for deeds from the Iowa Railroad Land Company. The six contracts embrace the N. W. $\frac{1}{4}$ and the N. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of the section in question. He assigned all the contracts to Hallam. Afterwards, the Iowa Railroad Land Company being paid up, Hallam took from the company a

deed of the whole. It never was understood, however, that he was to hold all the land as security for the debt due from D. K. Hungerford, as above set out; and the plaintiff claims that it never was understood that he should hold the $21\frac{1}{2}$ acres in controversy as security for such debt.

The question is as to what the understanding was in that respect. There never would have been any difficulty, we think, but for the connection which one Cyrus Hungerford had with the land. At the time of the purchase from the Iowa Railroad Land Company, D. K. Hungerford took the six contracts, not for himself alone, but partly in trust for Cyrus Hungerford, who was regarded, at least as between the two Hungerfords, as the owner of one-half. Whether he was at any time regarded as the owner of an undivided half does not appear. Certain it is that Cyrus became at some time the owner of the S. $\frac{1}{2}$, and D. K. of the N. $\frac{1}{2}$, each having 117 acres, two of the subdivisions being fractional. This was the condition of their ownership at the time the plaintiff took his mortgage from D. K. Hungerford on the N. 117 acres, and Hallam claims that this was the condition of their ownership at the time he first acquired an interest in the land. The plaintiff's theory is that there was at one time a different division, by which the $21\frac{1}{2}$ acres in controversy was not embraced in D. K. Hungerford's part, but in Cyrus' part; that such was the division at the time D. K. Hungerford's indebtedness to Hallam accrued, and at the time he undertook to give Hallam security; and that there was no understanding that Hallam was acquiring security upon Cyrus Hungerford's land for D. K.'s debt.

We are brought, now, to a consideration of the evidence upon this point. We have already seen that D. K. Hungerford, the plaintiff's mortgagor, never had the legal title to any part of the land covered by the six contracts for deeds executed to him by the Iowa Railroad Land Company; but at the time he borrowed money of Hallam he held the contracts, and he assigned them all to Hallam, and upon them

Hallam obtained deeds. We may say, also, that the assignment of the contracts was made before the plaintiff took his mortgage. *Prima facie*, then, Hallam, had a right in all the land. His case was made out by showing his title, (which, however was not disputed,) and the burden was upon the plaintiff to show that Hallam's right was not co-extensive with his title, and did not, at the time of the trial, embrace the 21½ acres in controversy. The plaintiff relies for evidence upon the fact that three of the contracts purport to have been assigned by D. K. Hungerford to Hallam, December 3, 1881, which is claimed to be the date of Hallam's loan to Cyrus, while D. K. Hungerford's loan from him was made about January 17, 1882. The plaintiff asks us to infer that the contracts purporting to be assigned in December were understood to belong to Cyrus, and not to D. K. Now, one of these contracts assigned in December embraced the 21½ acres in controversy, and so it is said that Hallam did not acquire a lien upon that land for D. K.'s debt. But to our mind the plaintiff's inferences are far-fetched, and not sufficient to sustain his position. The 21½ acres in controversy are embraced in the S. E. ¼ of the N. W. ¼ of the section. Now, suppose it is true, as the plaintiff claims, that the contract for that forty was assigned to Hallam by D. K. at the time of Hallam's loan to Cyrus, that does not constitute any reliable evidence that the whole forty was regarded at that time as belonging to Cyrus. This was one of the two middle forties. If none of the subdivisions had been fractional, there would have been in the six forties 240 acres. Cyrus and D. K. would each have had 120 acres; and the division line between them, if so drawn as to give D. K. the N. ½ and Cyrus the S. ½, would have been drawn east and west through the middle of the two middle forties. But the north two subdivisions were fractional and diminutive. A division of the whole land, therefore, into N. ½ and S. ½ required that the division line should be run south of the middle of the two middle forties, and so that 21½ acres or each forty should

fall in the N. $\frac{1}{2}$, or D. K. Hungerford's half, and eighteen and one-half acres of each forty should fall in the south, or Cyrus Hungerford's half.

It is conceded, then, that Cyrus owned at least a part of that one of the middle forties which embraces the twenty and one-half acres in controversy. We think the fact is that he owned eighteen and one-half acres in each of the middle forties, just as it is conceded that he did afterwards. That division gave him precisely one-half in quantity, and in a regular form, and the evidence shows that it was one-half in value. But the point to be considered just here is that he owned at least a portion of the forty which embraced the twenty-one and one-half acres in controversy. The understanding was that he should give such security as he could upon his portion of the land. It is conceded that he owned the entire two south forties, and D. K., the holder of the contracts, was called upon to assign to Hallam the contracts for those two forties, which he did. But those two did not embrace all of Cyrus' land. If he owned, as we think he did, the south eighteen and one-half acres of each middle forty, the problem as to how Hallam should be given the security to which he was entitled was not one of entirely easy solution. The Iowa Railroad Land Company was not bound to receive pay upon a part of a forty, and convey it to one claiming to be assignee of part of a contract. Now, what did they do? Hallams's testimony upon the point is in these words: "Cyrus gave me, as security, his contracts for the N. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$, and S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$." Taking this testimony to be true, Hallam acquired as security for his loan to Cyrus four contracts, to-wit, contracts for the south two forties and for the middle two forties. But, according to the dates of assignments, it would appear that only three contracts were assigned at the time of the loan to Cyrus, and for the purpose of the opinion, it may be conceded that that was all. But, in view of the difficulty of giving Hallam security upon precisely the south 117 acres, we think that what was done

was not necessarily inconsistent with the supposition that the division which gave Cyrus the south 117 acres was already made. It was probably the best approximation to what the parties desired that they could think of just then. Of course if Cyrus did not own the whole of the last middle forty covered by one of the contracts assigned; and if, as he testifies, he did not understand that he was getting security on the whole for Cyrus' debt,—then he lacked somewhat just at that time of getting as much security as he was entitled to. But he lacked only eighteen and one-half acres, and he soon acquired a contract which covered that. He acquired all the contracts, and he testifies, in substance, that the understanding was that he was to hold the north 117 acres as security for what was due from D. K. Hungerford, and the south 117 acres as security for what was due from Cyrus. We cannot hold that his testimony is overcome by a circumstance from which a mere doubtful inference can be drawn. Besides, it is unreasonable that the two Hungerfords', understanding that they were equal owners of the tract of 234 acres of uniform quality, as the evidence shows, should make the division which the plaintiff claims. There is no reason, apparently, why they should not have made at the outset the division which was fair and right between them, and which we know they did make at some time. Whatever looseness or irregularity there was in the business with Hallam grew, in part, we think, out of the difficulties of the situation, and in part out of what we may presume was the relation between the Hungerfords. That relation was certainly confidential, and we may presume was friendly.

We have not noticed every consideration relied upon by the plaintiff. But there is none more cogent than that which we have discussed. It is sufficient to say that we think that the decree gave the plaintiff a lien upon land as the first and only lien, which he did not understand was such when he took the mortgage, and which he did not understand was such when the action was commenced, and that we think that the

decree does violence to the real understanding of all the parties.

II. The defendant contends that he should have been allowed more for attorney's fees, but we see no evidence as to what would be a reasonable fee, and we cannot disturb the decree on that point.

III. The plaintiff appealed upon the ground that the decree allowed Hallam too much interest. The court allowed Hallam ten per cent interest on $450, being money paid by him for taxes and other prior claims to protect his own lien. This was done after the plaintiff acquired his mortgage. Whatever might have been the agreement between Hallam and D. K. Hungerford, we do not think that, as against the plaintiff, he was entitled to more than six per cent.

The plaintiff also appealed on the ground that the court allowed Hallam an attorney's fee of $55. We see no evidence to justify this allowance.

As the decree is modified in some respects in favor of the plaintiff, and in some respects in favor of Hallam, we think that they should each pay one-half of the costs.

MODIFIED AND AFFIRMED.